J-S36005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CRAIG ROBERT GOOD :
:
Appellant : No. 8 MDA 2019

Appeal from the Judgment of Sentence Entered December 6, 2018
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000217-2018

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED SEPTEMBER 06, 2019**

Appellant, Craig Robert Good, challenges the judgment of sentence entered in the Berks County Court of Common Pleas, following his convictions for criminal trespass and related crimes. Specifically, Appellant contests the denial of his motion to sever the charges stemming from multiple criminal episodes in which he broke into his victims' homes. After careful review, we affirm.

Police investigated a series of nighttime home break-ins, beginning with Danny O'Boyle's home in Sinking Spring, Pennsylvania, late in the evening on November 30, 2017. The burglar entered through an unlocked back door sometime after 10 p.m., when O'Boyle and his wife were asleep, and took O'Boyle's iPhone, iPad, wallet, and 2005 Hyundai Sonata. O'Boyle identified

_____

[*] Retired Senior Judge assigned to the Superior Court.

several fraudulent transactions on the card made after the burglary, including two purchases at different Sunoco gas stations, and another transaction at a Wawa.

The next victim, Heather Smith, lived in West Lawn, a short distance away from O'Boyle's home. On the morning of December 1, 2017, Smith rose for work around 3 a.m., and looked for her purse downstairs. During the search, she noticed a second purse and a lunchbox were missing, and that the back door was ajar. Smith called police to report the burglary. Smith's credit card was charged four times beginning at 2 a.m., and ending two days later when Smith cancelled the card. Smith's credit card company did not inform her of where the card had been used; however, Smith had not authorized any of the charges.

Stephanie Ruffing also reported a break-in just over a week later, on December 9, 2017. Ruffing also lived in West Lawn, less than half a mile from Smith. Ruffing had fallen asleep on her couch, and was woken by her dog barking at around 5 a.m. Ruffing initially thought the figure she saw in her dining room was her husband, until he did not respond to her queries. The man grabbed some coats and threw them toward the dog before fleeing through the back door, which had been unlocked that evening. Ruffing did not report anything missing.

Finally, on December 17, 2017, Josephine and Monica Lash reported their home had been burglarized. When she woke up at 5 a.m. for work, Josephine noticed the window on her front porch was open. She saw her purse

was missing, along with Monica's purse and the keys to their Subaru Forester. Josephine also observed a few drops of blood on the curtain covering the open window where the burglar entered. Josephine's card had been used twice before 5 a.m. that morning, at the nearby Turkey Hill and Wawa convenience stores. Monica's card was used three times, from 4 a.m. until 5:30 a.m., at the Wawa, Sunoco, and Turkey Hill stores.

Several of the convenience stores were able to provide investigators with footage of the suspect who used the stolen cards there. Stills taken from the videos showed the same older, white male in each of the locations. The cars taken from the O'Boyle and Lash residences were also visible in several of the photos. Detectives circulated these photos to a countywide law enforcement network. Shortly thereafter, an officer from a local department identified the individual in the photos as Appellant.

Appellant was arrested and charged with four counts each of burglary, criminal trespass, receiving stolen property, and identity theft, as well as nine counts of access device fraud, five counts of loitering and prowling at nighttime, and two counts of theft by unlawful taking. He filed a motion for severance of the charges pertaining to each criminal incident; after a hearing, the court denied the motion.

Appellant proceeded to a jury trial. At the close of trial, Appellant moved for judgment of acquittal on all counts. The court determined the Commonwealth had charged Appellant under a number of incorrect provisions, including burglary charges that required proof of threat to commit bodily

injury. The court granted the motion as to all of the burglary and access device fraud counts, as well as the charges pertaining to the break-in at Stephanie Ruffing's home. Thus, the jury proceeded to deliberations on four counts of receiving stolen property and identity theft, three counts of criminal trespass and loitering and prowling at nighttime, and two counts of theft by unlawful taking.[1] The jury found Appellant guilty of all counts.

The court ordered a pre-sentence investigation. At sentencing, the court imposed an aggregate sentence of sixteen and one-half to forty years' incarceration. Appellant filed a motion to modify sentence, which was denied. Appellant then timely filed a notice of appeal, and complied with the dictates of Pa.R.A.P. 1925(b). This appeal is now properly before us.

Appellant raises a single issue on appeal, arguing that the trial court erred in denying his motion for severance. Appellant contends that none of the burglaries would have been admissible in separate trials, because they did not share a common plan or scheme. Instead, Appellant asserts that the only similarities shared are those common to most burglaries. Appellant concludes this Court must reverse his convictions and remand for a new trial. We disagree.

"A motion for severance is addressed to the sound discretion of the trial court, and … its decision will not be disturbed absent a manifest abuse of

---

[1] 18 Pa.C.S.A. §§ 3925(a); 4120(a); 3503(a)(1)(i); 5506; and 3921(a), respectively.

discretion." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1282 (Pa. Super. 2004) (*en banc*) (ellipses in original; citation omitted).

Pennsylvania Rule of Criminal Procedure 582 allows offenses charged in separate indictments or informations to be tried together, so long as "evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(a). If it appears joinder will prejudice a party, the court may order separate trials of offenses. ***See*** Pa.R.Crim.P. 583. However, "it is assumed that offenses charged in the same information will be tried together, unless the court orders separate trials." ***Commonwealth v. Cole***, 167 A.3d 49, 56 (Pa. Super. 2017) (citation omitted).

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997) (brackets in original, citation omitted).

While evidence of a previous crime is not admissible simply to prove a person's character in a criminal trial, the evidence may be admitted for another purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, or identity. ***See*** Pa.R.E. 404(b)(1)-(2). In admitting the

evidence, the court must determine whether its probative value outweighs its potential for unfair prejudice. **See** Pa.R.E. 404(b)(2). When considering admissibility on the basis of a common scheme between crimes, the trial court should note the elapsed time between the crimes, geographical proximity of the crime scenes, and manner in which the crimes were committed. **See Commonwealth v. Dozzo**, 991 A.2d 898, 902 (Pa. Super. 2010).

We note that, "where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable is separating the evidence." **Id**., at 903 (citation omitted). Further, in order to necessitate severance of the charges, any "prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." **Commonwealth v. Ferguson**, 107 A.3d 206, 210 (Pa. Super. 2015) (citation omitted).

Here, there were many similarities between the burglary offenses charged against Appellant in the single, 32-count criminal information. The robberies occurred within a three-week span. **See** N.T. Trial, 10/22/18, at 105, 111, 122, 130. The victims all lived within a two-mile radius of Appellant's home. **See** N.T. Trial, 10/23/18, at 197.

The burglar broke into each of the houses by using an unlocked back door or window. N.T. Trial, 10/22/18, at 109, 112, 125, 142. The burglar waited until late at night, while the victims were asleep, to break in. **See** N.T. Trial, 10/23/18, at 172. Police testified that these nighttime break-ins were

not "normal burglaries" for the area, which saw most of its home invasions during daylight hours while the owners were out. *Id*., at 163.

Once inside, the burglar took wallets and purses, with a specific interest in the victims' credit cards. He also took vehicles from two of the victims, which were later found abandoned. *See id*., at 196. The victims' credit cards were used at local convenience stores, including Turkey Hill, Wawa, and Sunoco, and the thief only charged purchases of $20.00 or less. *See* Commonwealth's Exhibits 1-4. The evidence demonstrates the burglaries were close in time and location, and committed in a similar manner.

Further, evidence from each burglary was relevant to establish Appellant's identity as the perpetrator. Several of the convenience stores provided surveillance footage of Appellant using the stolen cards and driving the stolen vehicles. *See* Commonwealth's Exhibits 5-25. The blood on the curtains at the Lash home was tested and found to belong to Appellant. *See* N.T. Trial, 10/23/18, at 292. Finally, items taken from Appellant's home pursuant to a search warrant were matched to items Appellant was wearing in the various surveillance footage by which he was identified. N.T. Trial, 10/23/18, 255-258. Thus, we find the evidence was properly admissible.

The record also confirms the jury was capable of separating the evidence of each crime. The jury verdict sheet specified which counts pertained to each victim, and described the items alleged to have been stolen. We do not find a high risk of confusion among the jury likely under such circumstances.

Finally, Appellant was not unfairly prejudiced by the trial court's denial of his motion for severance. As the trial court aptly summarized:

> Appellant committed a series of early morning home invasions in Spring Township during the month of December, 2017. Surveillance cameras then captured footage of him using the victims' stolen credit cards at several convenience stores. Allowing the jury to hear evidence connecting [] Appellant to the home invasions and establishing his identity did not constitute undue prejudice.

Trial Court Opinion, filed 3/8/19, at 5-6.

We agree. As such, we find Appellant is due no relief on this issue, and accordingly affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2019